**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

|   |   |   |
|---|---|---|
| ABBOTT BIOTECHNOLOGY LTD., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 09-40089-FDS |
| v. | ) ) | |
| CENTOCOR ORTHO BIOTECH, INC., | ) ) | |
| Defendant. | ) ) ) | |

**REPLY IN SUPPORT OF ABBOTT'S MOTION TO ENTER PROTECTIVE
ORDER AND PERMIT ABBOTT'S COUNSEL THE SAME ACCESS TO
CONFIDENTIAL INFORMATION AS CENTOCOR'S COUNSEL**

In opposing Abbott's motion to allow its attorneys the *same access* to confidential information already enjoyed by Centocor's counsel, Centocor mis-casts Abbott's motion as a "motion to compel in disguise" that seeks production of "over a million pages of documents." (*E.g.*, CNTO Br. at 1, 2.)[1]  Not so.  Abbott merely seeks to allow its lawyers to review documents, deposition transcripts, and other information that Centocor *has already produced* (or will produce) to Abbott in the parties' Stelara litigation, but which Centocor refuses to let Abbott's lawyers in this case review by virtue of its proposed protective order.

The unfairness of Centocor's position should be plain: Centocor should not be able to use procedural wrangling with protective orders to allow Centocor to see all Abbott confidential information in the parties' Stelara litigation, and at the same time preclude Abbott counsel from having that same access.  Moreover, Centocor cannot reasonably claim any "burden" based on Abbott's request to let its lawyers review information Centocor has already gathered and produced.  Accordingly, because these Stelara materials have already been produced and

---

[1] "CNTO Br." refers to Defendant Centocor's Ortho Biotech, Inc.'s Opposition to Plaintiff's Motion to Enter Protective Order (Docket Entry No 50).

Centocor is seeking to conceal them from Abbott's counsel here via a protective order, the burden does indeed lie with Centocor to show "good cause" why those materials should be protected from disclosure, *see* Fed. R. Civ. P. 26(c). Centocor does nothing to meet this burden.

Instead, Centocor argues that Abbott's motion should be denied because not all 1.3-million documents produced in the Stelara case are relevant to the Simponi case. (CNTO Br. at 5.) Of course this is true (it is doubtful that they are all relevant even to the Stelara case, for that matter). But that is not the issue. There is no dispute that there is factual overlap between the cases (*e.g.*, there are at least 14 overlapping Centocor witnesses), and Abbott's in-house and outside counsel working on the cases should be able to view the documents and pleadings to develop and coordinate their cases, just as Centocor's counsel can already do. In the absence of any showing of significant harm or overwhelming burden, there is no reason to preclude Abbott's lawyers from having the same access to the documents that Centocor's counsel already enjoys. Thus, as Centocor has failed to show good cause why Abbott's counsel here should be denied access to Stelara materials, Abbott's motion should be granted.

**I.     Centocor Has Not Met Its Burden of Establishing Good Cause for Preventing Abbott's Counsel Access to the Already Produced Stelara Litigation Materials.**

Centocor's opposition ignores the controlling premise here: As this District has held, "[g]ood cause must be shown to limit a *party's right to disseminate information* [already] *obtained in discovery*." *E.g.*, *Baker v. Liggett Grp., Inc.*, 132 F.R.D. 123, 126 (D. Mass. 1990) (citing *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir. 1986)) (emphasis added); *Miller v. City of Boston*, 549 F. Supp. 2d 140, 142 (D. Mass. 2008) ("If the proponent cannot establish good cause, 'the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection.'") (citations omitted); *DeFord v. Schmid Prods. Co.*, 120 F.R.D. 648, 654 (D. Md. 1987) (sharing discovery information "with other litigants and their counsel" is "an appropriate goal under the Federal Rules of Civil Procedure"). Moreover, under the auspices of a protective order entered in the parties' Stelara litigation, Centocor is the party seeking to bar Abbott from sharing materials in the Stelara case--*materials which Centocor has*

*already produced to Abbott*--with its Abbott lawyers in this "Simponi" case. Accordingly, Centocor is the party that bears the burden of showing "good cause" and that specific, identifiable harm would result here if Abbott's Simponi lawyers review information *already provided to Abbott* in the parties' Stelara case. *See, e.g., id.*; *Miller*, 549 F. Supp. 2d at 141 ("The proponent of a Protective Order bears the burden of establishing 'good cause' for its continuation.") (footnote omitted); Fed. R. Civ. P. 26(c); *accord Verizon California, Inc. v. Ronald A. Katz Tech. Licensing*, 214 F.R.D. 583, 586 (C.D. Cal. 2003). Thus this is *not* a "motion to compel in disguise"--Abbott's motion seeks only to allow its Simponi lawyers to see information that Centocor produced to Abbott in the Stelara case and to discuss that information with Abbott's Stelara counsel. And granting such access does not impose any additional burden.

But under the applicable law, Centocor has entirely failed to carry its burden in showing the requisite good cause. "'A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" *E.g.*, *Miller*, 549 F. Supp. 2d at 141 (*quoting Anderson*, 805 F.2d at 7). Yet Centocor's brief has not even attempted to demonstrate any potential harm that would allegedly result from allowing Abbott's Simponi counsel access to the Stelara materials already provided to Abbott.[2] Indeed, other than making a brief and "broad, conclusory allegation[] of potential harm," (*see* CNTO Br. at 7), Centocor offers no affidavit or any other such evidence necessary to carry its burden. *See, e.g.,* cases cited in n.2, *infra*. Rather, Centocor's argument focuses on the proposition that not all the documents in the Stelara case are relevant to this case. While likely true, this assertion does nothing to establish the "good cause" needed for a protective order. *See id.* Thus, Centocor has not met its burden to prevent Abbott's Simponi counsel from having access to Stelara litigation materials.

---

[2] *See, e.g.*, *Miller*, 549 F. Supp. 2d at 141; *Baker*, 132 F.R.D. at 126 ("Defendants in this case have not shown good cause to preclude the sharing of confidential information with other litigants and their counsel subject to the protective order in this case."); *Burlington City Bd. of Educ. v. U.S. Mineral Prods. Co.*, 115 F.R.D. 188, 190-91 (M.D.N.C. 1987) ("The courts considering the matter have overwhelmingly and decisively endorsed the sharing of discovery information among different plaintiffs, in different cases, in different courts") (citations omitted); *DeFord*, 120 F.R.D. at 653.

## II.   As a Matter of Efficiency and Fairness, Abbott's Counsel Should Have the Same Access to the Stelara Litigation Materials as Centocor's Counsel.

Moreover, there is significant overlap between the two cases and Centocor's attempt to minimize this fact is unavailing.  For example, Centocor emphasizes that 9 of the 23 individuals that Centocor identified in its initial disclosures in both cases are Abbott or third-party employees. (CNTO Br. at 6-7.)  But that of course leaves *14* Centocor employees who Centocor has identified as being relevant to both cases. (*Cf.* CNTO Br. at 7 ("[T]here are only a handful of Centocor employees that are identified in the initial disclosures of both cases.").)  And as described in Abbott's opening brief, Centocor used overlapping technology in developing the antibodies at issue in each of the respective litigations, Stelara and Simponi. (D.E. #47 at 6.)  Due to the overlapping parties, subject matter, and witnesses, Abbott would be disadvantaged by a procedural tactic that would prevent Abbott in-house counsel down the hall from each other--and Abbott outside counsel down the street from each other--from being able to fully coordinate their cases, which of course requires access to pleadings, exhibits, and other documents.  Particularly where Centocor has identified no significant prejudice or burden to allowing Abbott's Simponi counsel access to these materials, there is no reason to preclude Abbott's counsel from enjoying the same access already enjoyed by Centocor's counsel.

It is also unfair to allow Centocor's counsel to be the sole decision makers as to what documents from the Stelara litigation Abbott's counsel in this litigation should be allowed to see.  Moreover, contrary to Centocor's suggestion (CNTO Br. at 9-10), Abbott's counsel here cannot divine which of the precise Stelara case materials may be relevant to this litigation without *seeing* those documents in the first place.  At best, then, Centocor's position would force Abbott to go through the time-consuming and costly exercise of seeking duplicative discovery, contrary to this District's ruling (among others) and common sense.[3]  For itself, however, Centocor's

---

[3] *See, e.g., Baker*, 132 F.R.D. at 126 (rejecting as "inappropriate" the defendant's suggestion that different plaintiffs in another case "must go through a comparable, prolonged and expensive discovery process" instead of sharing materials already produced in that case); *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) ("Where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such

position posits that it can play by a different set of rules, as Centocor counsel even now can operate without the restrictions it would impose on Abbott and thus can simultaneously consider the impact of overlapping documents, testimony, or other discovery in both cases. As a matter of fairness and efficiency, the Abbott's lawyers should have the ability to review testimony, documents, and other Centocor confidential information from the Stelara case, just as Centocor's lawyers already do with Abbott's confidential information.

Finally, without citing case law to support its own positions on this *protective-order* issue, Centocor suggests that the case law cited in Abbott's brief is inapplicable because those cases pre-dated the 2000 change to the Rule 26 discovery "relevance" standard. (*See* CNTO Br. at 8-9.) But that change to the discovery standard worked no change to the protective-order analysis at issue here. Indeed, contrary to Centocor's suggestion, since 2000 courts in this Circuit and elsewhere have continued to cite those same pre-2000 cases or apply the same "harm" and "good cause" standard that applies here.[4] Moreover, Centocor's effort to distinguish the pertinent case law relies largely on Centocor's own analysis of the discovery described in those cases and whether *Centocor* (as opposed to the court) considered such discovery "clearly" relevant to the issues in those decisions (*see* CNTO Br. at 9). But various of the cited decisions themselves do not engage in the "relevance" inquiry that Centocor now tries to interject into this straight-forward Abbott request for access.[5] Accordingly, and consistent with the applicable case

---

modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification") (Wisdom, J.).

[4] *See, e.g., Miller*, 549 F. Supp. 2d at 141-42 (D. Mass. 2008); *Caballero v. Hospital Espanol Auxilio Mutuo de Puerto Rico, Inc.*, 2010 WL 503059, at *2 (D.P.R. Feb. 8, 2010) ("In other words, '[a] finding of good cause [for protective-order purposes] must be based on a particular factual demonstration of potential harm, not on conclusory statements.'") (quoting *Baker*, 132 F.R.D. at 125); *Bank of America, N.A. v. Hensley Properties, L.P.*, 2008 WL 327 2077, at *3 (E.D. Cal. Aug. 6, 2008) (quoting same *DeFord* standard requiring "specific demonstrations of fact, supported where possible by affidavits and concrete examples of harm" to support protective order that would bar use of discovery materials).

[5] *See, e.g.*, *DeFord*, 120 F.R.D. at 652-54 (focusing on whether the party seeking to limit access to deposition transcripts and documents from another litigation carried its burden in showing "identifiable, significant harm"); *Baker*, 132 F.R.D. at 125-26 (same); *Burlington City*, 115 F.R.D. at 190-91 (same); *see also Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *In re Stegall*, 865 F.2d 140, 142 (7th Cir. 1989) ("A point of law merely assumed in an opinion, not discussed, is not authoritative.").

law, there is nothing "unusual" (much less "highly unusual," *see* CNTO Br. at 9) about Abbott's request that its lawyers may review discovery already produced to Abbott by the same defendant (Centocor) in another case that involves many of the same witnesses, inventors, and overlapping technologies. *See generally Baker*, 132 F.R.D. at 125 (good cause must be shown to limit a party's right to disseminate information obtained in discovery). The Court should reject Centocor's attempt to unfairly prejudice Abbott by way of its protective-order positions.[6]

## CONCLUSION

For the foregoing reasons, the Court should GRANT Abbott's Motion, enter the proposed Protective Order, and thereby permit Abbott's lawyers in this litigation access to the confidential information in the Stelara litigation.

---

[6] The Court should also disregard Centocor's argument that, in essence, Abbott's choice of counsel in this litigation should unfairly prejudice Abbott's ability to review discovery and prepare for the case (*see* CNTO Br. at 2, 7), given the considerations that each party may seek to be represented by counsel of choice. *Cf. Caplin & Drysdale, Chartered v. U.S.*, 491 U.S. 617, 624-25 (1989) (discussing contexts in which law may not "impermissibly burden[] a defendant's right 'to select and be represented by one's preferred attorney'") (citing *Wheat v. U.S.*, 486 U.S. 153 (1988)).

| | |
|---|---|
| September 9, 2010 | Respectfully submitted, |

/s/ Michael P. Angelini
Michael P. Angelini (BBO# 019340)
Douglas T. Radigan (BBO# 657938)
BOWDITCH & DEWEY LLP
311 Main Street, PO Box 15156
Worcester, MA 01615-0156
(508) 791-3511
mangelini@bowditch.com
dradigan@bowditch.com

-and-

Michael A. Morin (pro hac vice)
David P. Frazier (pro hac vice)
D. Brian Kacedon (pro hac vice)
John T. Battaglia (pro hac vice)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000
michael.morin@finnegan.com
david.frazier@finnegan.com
brian.kacedon@finnegan.com
john.battaglia@finnegan.com

*Attorneys for Plaintiff*
ABBOTT BIOTECHNOLOGY LTD.

**Certificate of Service**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 8, 2010.

/s/ Michael P. Angelini
Michael P. Angelini